LEAR, Judge.
Charles Carter & Company, Inc. (Carter) and Dixie Electric Membership Corporation (Dixie) entered into a contract in late 1973 for the construction of Dixie’s Zachary branch office. Ten thousand dollars of the contract price remained unpaid and Carter filed suit for it and for the additional sum of Fourteen Thousand Two Hundred Fifty-nine and 22/100 ($14,259.22) Dollars for work performed above and beyond the requirements of the contract.
In its answer to the suit, Dixie admitted holding said ten thousand dollars, but alleged that the asphalt storage area was constructed in such a way that it began to deteriorate immediately. By supplemental reconventional demand, Dixie alleged that it would take the sum of Thirty-five Thousand Nine Hundred Nine and 90/100 ($35,-909.90) Dollars to repair this condition and put the storage area in good condition. Also Dixie, in its third party demand, sued its architects, Miller, Smith & Champagne, Inc. (architects), and sought to hold them liable in the event that it was cast for any amount on the main demand filed by Carter. This third party demand was based on the grounds that the architects specified an inadequate material for use as a soil stabilizer for the storage area. The architects filed a third party demand, suing Holten International, Inc. (Holten), manufacturer of a product called Pen-E-Pac, and alleged that it was not fit for the purposes intended and inadequate for use as a soil stabilizer in connection with the construction of the storage area. Arrow Construction Company (Arrow), Carter’s sub-contractor for the paving portion of the contract, was also made a third party defendant. Arrow did not appear and Carter confirmed a default judgment against Arrow in the amount of Fifteen Thousand Five Hundred Thirty-three and No/100 ($15,533.00) Dollars, plus costs.
There were a number of photographs offered in evidence which corroborate the testimony relative to the failure of this paved storage area. The sub-contract between Carter and Arrow specified outdoor storage paving, soil cement, stabilized with Pen-E-Pac soil stabilizer.
In the contract between Dixie and Carter, Section 2.3-04 provides that this contractor shall construct the drives, parking and storage area in accordance with standard specifications of the Department of Highways, State of Louisiana. Paragraph 2.3-05, Sub-paragraph B, provides that soil cement base course shall consist of a foundation course for the surface course. The base shall be composed of a combination of sand, clay gravel and portland cement uniformly mixed, moistened and compacted in accordance with Louisiana highway specifications. Sub-paragraph C, Section 4, states that in lieu of soil cement base course this contractor shall use the Pen-E-Pac liquid soil stabilizer in the storage area.
Pen-E-Pac is a trade name for a soil stabilizer which, according to the testimony of an expert, lubricates the soil to the extent that friction is removed and it is more easily compacted. According to this expert and to Holten’s brochure, Pen-E-Pac was offered in good faith but without warranty, and was recommended for use in conjunction with lime and/or cement stabilization. There is nothing in the brochure to indicate that Pen-E-Pac would strengthen the soil, but merely aid in compacting.
The trial court stated, in written reasons:
“It should not take a chemist or engineer, upon reading these specifications, to immediately question Pen-E-Pac’s strength, as it was to be substituted for soil cement, whose properties are well known in the construction industry.”
It was recommended that Pen-E-Pac, which is a liquid, was to be mixed in a ratio of two gallons of Pen-E-Pac to one thousand gallons of water and spread on the soil to be compacted.
*634 Appellant has cited numerous cases in which the courts have held that the builder or contractor does not guarantee the sufficiency of the specifications. We agree with appellant, inasmuch as neither party makes such guarantee unless such is spelle'd out in the contract or specifications. We also agree with cases cited by appellant that where the owner, through his architect, can be regarded as having superior knowledge and represents to the builder the feasibility of such plans or specifications, the owner is responsible for any defects resulting from such representations. As stated in Brasher v. City of Alexandria, 215 La. 887, 41 So.2d 819, on rehearing:
“It is the duty of one, who proposes to enter into a building contract to examine the contract, plans and specifications, and to determine whether it is possible to do the work before entering into the engagement [to do the work], or to insist upon some stipulation covering that matter.”
In the instant case, Carter admitted having no familiarity with Pen-E-Pac prior to bidding on the contract, yet Carter offered a reduction of the bid price if such was used. It seems apparent that a study of the specifications and the alternate (Pen-E-Pac as opposed to the known characteristics of soil cement) would require Carter to make an inquiry before bidding to perform the work.
The trial judge felt that both Carter and Arrow were under a duty to inquire as to the properties of Pen-E-Pac before contracting to use it. The court likewise was of the opinion that the architects were at fault in permitting the substitution, with which we agree.
A careful review of the record does not disclose manifest error or abuse of discretion; therefore, the judgment of the trial court is affirmed, appellant to pay all costs of this appeal.
AFFIRMED.